*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0267P (6th Cir.)
File Name: 04a0267p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

STEVE RUSK, Individually and as the Father, Natural Guardian and Next Friend of Daniel and David Rusk, Minors,
*Plaintiff-Appellee,*

*v.*

CRESTVIEW LOCAL SCHOOL DISTRICT, et al.,
*Defendants-Appellants.*

No. 02-3991

Appeal from the United States District Court
for the Northern District of Ohio at Toledo
No. 01-07239—James G. Carr, District Judge.

Argued: February 4, 2004

Decided and Filed: August 12, 2004

Before: BATCHELDER, GIBBONS, and COOK, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Scott C. Peters, BRITTON, SMITH, PETERS & KALAIL, Cleveland, Ohio, for Appellants. Scott T. Greenwood, AMERICAN CIVIL LIBERTIES UNION OF OHIO FOUNDATION, Cleveland, Ohio, for Appellee. **ON BRIEF:** David A. Rose, David Kane Smith, BRITTON, SMITH, PETERS & KALAIL, Cleveland, Ohio, for Appellants. Jillian S. Davis, Raymond Vasvari, AMERICAN CIVIL LIBERTIES UNION OF OHIO FOUNDATION, Cleveland, Ohio, for Appellee. Nathan A. Adams IV, CENTER FOR LAW AND RELIGIOUS FREEDOM, Annandale, Virginia, Walter M. Weber, Jay A. Sekulow, AMERICAN CENTER FOR LAW AND JUSTICE, Washington, D.C., for Amici Curiae.

---

**OPINION**

---

COOK, Circuit Judge. Defendant-Appellant Crestview Elementary School appeals the district court's grant of partial summary judgment in favor of Plaintiff-Appellee Steve Rusk on Rusk's action challenging Crestview's practice of placing flyers from community organizations advertising religious activities in students' school mailboxes. The district court, ruling that Crestview's practice violated the Establishment Clause of the First Amendment, issued a permanent injunction barring Crestview from distributing flyers advertising religious activities. We conclude that Crestview's practice does not violate the Establishment Clause, and therefore we reverse the district court's ruling and grant summary judgment in favor of Crestview.

## I

As a service to community organizations, Crestview occasionally distributes flyers advertising activities sponsored by such various groups as the American Red Cross, the 4-H Club, sports leagues, and local churches. Some of the flyers describe religious activities; for example, one flyer advertises "games, Bible stories, crafts and songs that celebrate God's love," while another notes that a program is "Rated Religious."

Although the school does not have a written policy governing the distribution of flyers, according to Crestview's unwritten policy organizations first submit their flyers to the principal, who reviews them to ensure that (1) the sponsoring organization is a non-profit group serving children in the community, and (2) the flyer does not "advocate the benefits of a particular religion" and was not "created for use as a recruiting tool." (Aff. of Principal.) If the principal approves a flyer, copies (that the organization supplies) are given to teachers, who place them in students' mailboxes. Crestview also uses these mailboxes for distributing official school papers. While teachers require students to remove the flyers from the mailboxes, teachers do not discuss the flyers either informally or as part of formal classroom instruction.

Rusk is a parent of two children attending Crestview. Rusk contends that the school's distribution of flyers advertising religious activities violates the Establishment Clause of the First Amendment. His complaint sought a declaratory judgment and an injunction prohibiting Crestview from "engaging in acts of proselytization." Both parties moved for summary judgment. The district court granted Rusk's motion in part, enjoining the school from "distributing flyers or similar notices that advertise religious activities." The district court's opinion specified that while Crestview cannot "advertis[e] activities at which proselytization will occur," the injunction does not bar the school from distributing

"[a]dvertisements promoting a food drive sponsored by a local church or temple to benefit the poor of the community, or even a youth sports league." Slip Op. at 12. The court based its conclusion that Crestview violated the Establishment Clause solely on the possibility that "impressionable" elementary school students would misperceive the school's distributing flyers advertising religious activities as promoting religion.

Crestview appeals the partial grant of Rusk's summary judgment motion and the denial of its own motion, arguing that (1) Crestview's practice does not violate the Establishment Clause, and (2) the Free Speech Clause requires Crestview to distribute flyers advertising religious activities.

## II

### A. The Establishment Clause

In *Lemon v. Kurtzman*, the Supreme Court set forth the basic test for determining whether a state action violates the Establishment Clause. 403 U.S. 602, 612-13 (1971). Under *Lemon*, the government has violated the Establishment Clause if: (1) the purpose of the state action is to aid or promote religion; (2) the primary effect of the action is to aid or promote religion; or (3) the result is excessive entanglement with religion. *Id.* In this appeal, Rusk does not contend that Crestview's practice is intended to promote religion or results in excessive entanglement with religion. Instead, Rusk argues that because the practice in effect endorses religion, it is unconstitutional either under the *Lemon* test's second element or under other Supreme Court precedents.

Whether a particular state action endorses religion depends upon how a reasonable observer would interpret the action. *See Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 779-80 (1995) (O'Connor, J., concurring); *see also*

*Zelman v. Simmons-Harris*, 536 U.S. 639, 655 (2002) ("[N]o reasonable observer would think a neutral program of private choice . . . carries with it the *imprimatur* of government endorsement."); *Lynch v. Donnelly*, 465 U.S. 668, 686 (1984) (holding that a reasonable observer would interpret the inclusion of a nativity scene in a public holiday display to be acknowledging, rather than promoting, religion).

We disagree on two grounds with Rusk's contention that in deciding whether a reasonable observer would perceive endorsement, this court should assess Crestview's practice from the perspective of a Crestview student. First, because Crestview students cannot participate in any of the advertised activities without their parents' permission, the relevant observers are the parents. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 115 (2001) ("[T]o the extent we consider whether the community would feel coercive pressure to engage in the Club's activities, the relevant community would be the parents, not the elementary school children. It is the parents who choose whether their children will attend the Good News Club meetings." (citation omitted)). As such, the parents must be deemed aware that Crestview distributes flyers advertising both religious and nonreligious community events. *Zelman*, 536 U.S. at 655 (noting that "the reasonable observer in the endorsement inquiry must be deemed aware of the history and context underlying a challenged program" (internal quotation marks omitted)). Given this awareness, no reasonable observer could conclude that by distributing the flyers at issue here, Crestview is endorsing religion. *See Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 395 (1993) (rejecting anticipated Establishment Clause challenge to policy concerning use of school facilities and ruling that because religious and secular organizations would have equal access, "there would have been no realistic danger that the community would think that the [School] District was endorsing religion or any particular creed").

Second, even if the Crestview students were the relevant audience, their youth would not alter the outcome of our reasonable observer analysis. The Supreme Court has, as Rusk points out, expressed general "heightened concerns" about the impressionability of elementary school students. *E.g., Edwards v. Aguillard*, 482 U.S. 578, 583-84 (1987) ("The Court has been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools."); *Widmar v. Vincent*, 454 U.S. 263, 274 n.14 (1981) ("University students are, of course, young adults. They are less impressionable than younger students and should be able to appreciate that the University's policy is one of neutrality toward religion."). But despite such concerns, the Court has never ruled that a school's practice might amount to an impermissible endorsement of religion because of the impressionability of the school's young students. The Court's opinion in *Milford* suggests just the opposite—that elementary school students' possible misperceptions of endorsement are an insufficient basis for finding an Establishment Clause violation:

> We cannot operate, as Milford would have us do, under the assumption that any risk that small children would perceive endorsement should counsel in favor of excluding the Club's religious activity. We decline to employ Establishment Clause jurisprudence using a modified heckler's veto, in which a group's religious activity can be proscribed on the basis of what the youngest members of the audience might misperceive.

*Milford Cent. Sch.*, 533 U.S. at 119.

Rusk's citation to *Lee v. Weisman* does not convince us that whether distributing flyers advertising religious activities constitutes endorsement of religion depends on how a reasonable elementary school student would perceive the practice. In *Lee*, the Supreme Court held that a public school's practice of inviting local clergy to offer prayers at

middle and high school graduation ceremonies violated the Establishment Clause. 505 U.S. 577, 599 (1992). The Court's opinion noted two controlling factors: (1) the offering of a prayer at school graduation ceremonies constituted a "state-sponsored religious activity"; and (2) although not required, attendance at the ceremonies was "in a fair and real sense obligatory." *Id*. at 586. The Court discussed at length the likely coercive effect of the prayer on students attending the ceremony, stating "there are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools," and "prayer exercises in public schools carry a particular risk of indirect coercion." *Id*. at 592. Adolescents, the Court observed, are especially vulnerable to pressures to conform. *Id*. at 593. Because a reasonable high school student could believe that the school was requiring her to pray, the Court declared the school's practice unconstitutional. *Id*. ("What matters is that, given our social conventions, a reasonable dissenter in this milieu could believe that the group exercise signified her own participation or approval of it.").

The *Lee* Court considered the beliefs of a reasonable student observer not because of the possibility for misperceived endorsement but rather because of the possibility for coercion. No risk of coercion exists in this case because the religious activities are not school-sponsored events. *See Milford Cent. Sch.*, 533 U.S. at 116 (stating that "where the school facilities are being used for a nonschool function and there is no government sponsorship of the Club's activities, *Lee* is inapposite"); *cf. Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 302-06 (2000) (finding student-led prayers at school football games coercive); *Lee*, 505 U.S. at 596-99 (finding school-sponsored prayers at graduation ceremonies coercive).

Additionally, Rusk's "fear of a mistaken inference of endorsement" is unfounded "because the school itself has

control over any impressions it gives its students." *Bd. of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226, 251 (1990) (plurality opinion); *see also Hedges v. Wauconda Cmty. Unit Sch. Dist. No. 118,* 9 F.3d 1295, 1300 (7th Cir. 1993) ("Schools may explain that they do not endorse speech by permitting it. If pupils do not comprehend so simple a lesson, then one wonders whether [their] schools can teach anything at all. Free speech, free exercise, and the ban on establishment are quite compatible when the government remains neutral and educates the public about the reasons."). Moreover, not even impressionable elementary school students are likely to misperceive Crestview's practice of distributing flyers from a variety of community organizations as endorsing religion. In *Milford*, the Supreme Court noted that such students should know the difference between school-sponsored events and events requiring parental permission. *Milford Cent. Sch.*, 533 U.S. at 117-18 ("[E]ven young children are aware of events for which their parents must sign permission forms."). And unlike the Good News Club meetings at issue in *Milford*, none of the activities advertised in the flyers Crestview distributes take place on school grounds—further diminishing the likelihood that students will mistake the advertised religious activities for school-sponsored events.

The *Milford* Court also reasoned that students would be just as likely to infer hostility toward religion from the school's excluding the Good News Club as they would be to infer favoritism from the school's including it. *Id.* at 118. Similarly, if Crestview were to refuse to distribute flyers advertising religious activities while continuing to distribute flyers advertising other kinds of activities, students might conclude that the school disapproves of religion. *Id.*; *see also Mergens*, 496 U.S. at 248 ("[I]f a State refused to let religious groups use facilities open to others, then it would demonstrate not neutrality but hostility toward religion.").

Rusk implies that by distributing flyers advertising religious activities, Crestview sends a message of disfavor to students who are "nonadherents." Although Rusk quotes from several cases in which the Supreme Court stated that violations of the Establishment Clause could result in feelings of exclusion, the government programs at issue in those cases were unconstitutional not because they created the potential for misperceived favoritism of religion but because they actually favored religion. In *Texas Monthly, Inc. v. Bullock*, for example, the Supreme Court held that a Texas statute exempting religious publications from certain taxes violated the Establishment Clause because it provided a benefit to religious publications not also available to nonreligious publications. 489 U.S. 1, 17-18 (1989). And in *Edwards v. Aguillard*, the Court struck down a Louisiana statute requiring schools teaching evolution to also teach creationism because the statute preferenced the teaching of a particular religious subject. 482 U.S. at 597.

In both *Texas Monthly* and *Edwards*, the government action lacked a secular purpose; its intent was to promote religion. In neither case was the Court concerned that some citizens' misperceptions would cause them to feel less accepted if they did not share the views they mistakenly believed the government to be promoting. Instead, the Court's concern was that citizens who accurately understood the government to be promoting religion would feel less accepted if they did not share the government's religious views. Here, Crestview's practice—which is neutral toward religion—does not send a message of disfavor to students who do not attend the advertised religious activities. *Cf. Capitol Square Review & Advisory Bd.,* 515 U.S. at 780 (O'Connor, J., concurring) ("A State has not made religion relevant to standing in the political community simply because a particular viewer of [the challenged action] might feel uncomfortable.").

Finally, our conclusion that Crestview does not endorse religion by distributing flyers advertising religious activities

is consistent with other court of appeals and district court decisions involving elementary schools and the distribution of religious literature. In *Daugherty v. Vanguard Charter School Academy*, the district court for the Western District of Michigan held that a public elementary school did not violate the Establishment Clause when, as part of a general policy of distributing materials from various community groups, the school distributed flyers advertising religious activities. 116 F. Supp. 2d 897, 911-12 (W.D. Mich. 2000). Recognizing the school's neutrality toward religion, the district court explained:

> If defendants manipulated the facially neutral policy so as to give preferential access to religious literature or certain religious literature, then an Establishment Clause violation might be made out. However, the present record is devoid of any such evidence of favoritism or discrimination among community groups who wish to disseminate appropriate materials.

*Id*. (citing *Peck v. Upshur County Bd. of Educ*., 155 F.3d 274, 284 (4th Cir. 1998)).

Crestview considers the *Daugherty* opinion to squarely support its claims of neutrality and constitutionality. Rusk, however, contends—and the district court agreed—that the *Daugherty* court's citing of *Peck v. Upshur County Board of Education* renders its decision questionable, because in *Peck* the Fourth Circuit Court of Appeals held that a school district's policy allowing distribution of religious literature was unconstitutional as applied in elementary schools. Slip Op. at 9 (noting that "the Fourth Circuit did not intend the reasoning cited by the *Daugherty* court to apply to elementary school students").

While we generally agree with the *Peck* court's reasoning, we disagree with that court's—and the district court's—conclusion that the reasoning does not apply to

elementary school students. In *Peck*, parents challenged a school board's decision allowing a community group to distribute Bibles at tables in common areas of elementary, middle, and high schools. 155 F.3d 274 (4th Cir. 1998). The school board defended its policy as neutral toward religion, treating the Bible distributors the same as the 4-H Club or the Cub Scouts. The Fourth Circuit upheld the policy in the middle and high schools, finding that the schools had taken sufficient steps—including allowing a variety of community groups to distribute literature—to guard against students mistaking the distribution of Bibles as the schools' endorsement of religion. *Id*. at 287-88. The court did not, however, extend this finding to elementary schools, holding instead that allowing Bible distribution in these schools violated the Establishment Clause. *Id.* at 287-88 n.*.

The Fourth Circuit decided *Peck* before *Milford*'s rejection of the age and impressionability of elementary school students as grounds for ruling that allowing a religious club to meet in school classrooms would violate the Establishment Clause. Given *Milford*, we believe that *Peck*'s conclusions regarding older students properly apply to elementary school students as well. *See Child Evangelism Fellowship of Md., Inc. v. Montgomery County Pub. Sch*., 373 F.3d 589, 601-02 (4th Cir. 2004) (holding that a religious organization's participation in public elementary schools' "take-home flyer forum" likely would not violate the Establishment Clause and noting that in *Milford*, "the Supreme Court rejected the suggestion that, when [as here] the school was not actually advancing religion, the impressionability of students would be relevant to the Establishment Clause issue" (alteration in original) (internal quotation marks omitted)).

Accordingly, we conclude that the district court erred in finding an Establishment Clause violation based solely on the possibility that elementary school students might misperceive Crestview's practice of distributing flyers advertising

religious (as well as nonreligious) activities as the school's endorsing religion.

## B. The Free Speech Clause

Crestview argues that the district court's order prohibiting the school from distributing flyers advertising "activities at which proselytization will occur" violates the Free Speech rights of religious organizations. Our holding that Crestview does not violate the Establishment Clause by distributing flyers advertising community events, whether religious or nonreligious, resolves the controversy before us. We need not decide whether the Free Speech Clause requires Crestview to distribute flyers advertising religious activities.

## III

Accordingly, we reverse the district court's grant of partial summary judgment in favor of Rusk and remand with instructions for entry of judgment in favor of Crestview.