Jonathan **MORGAN**, et al., Plaintiffs,

v.

The **PLANO INDEPENDENT SCHOOL DISTRICT, Lynn Swanson, individually and as principal of Thomas Elementary School, Lisa Long, individually and as principal of Wells Elementary School, Suzie Snyder, individually, Jaclyn T. Bomchill (a/k/a Jackie Bomchill), individually and as principal of Rasor Elementary School, John Beasley, individually, Carole Greisdorf, individually and as the Assistant Superintendent of the Plano Independent School District, and Doug Otto, individually and as the Superintendent of Plano Independent School District, Defendants.**

**No. 4:04cv447.**

United States District Court, E.D. Texas, Sherman Division.

March 31, 2009.

Wm. Charles Bundren, Wm. Charles Bundren & Associates, Frisco, TX, Clyde Moody Siebman, Siebman Reynolds Burg & Phillips LLP, Sherman, TX, Hiram Stanley Sasser, III, Kelly Shackelford, Plano, TX, for Plaintiffs.

Charles Joseph Crawford, Richard Mercer Abernathy, Abernathy Roeder Boyd & Joplin, McKinney, TX, Thomas Phillip Brandt, Joshua Alan Skinner, Fanning Harper Martinson Brandt & Kutchin PC, Dallas, TX, Christopher Blewer Gilbert, Thompson & Horton LLP, Houston, TX, Jeffrey Carl Mateer, Lamberth Mateer, Rockwall, TX, for Defendants.

## *MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

RICHARD A. SCHELL, District Judge.

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636. On February 27, 2009, the report of the Magistrate Judge was entered, containing proposed findings of fact and recommendations that Defendants' Motion to Dismiss based on Qualified Immunity (Dkt. 173) should be DENIED as to both Defendants Swanson and Bomchill.

The court, having made a *de novo* review of the objections raised by both the moving-Defendants (Dkt. 231) the non-moving Defendants (Dkt. 232), as well as Plaintiffs' responses (Dkts. 233 & 234) is of the opinion that the findings and conclusions of the Magistrate Judge are correct, and the objections are without merit. Therefore, the court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of this court, and Defendants' Motion to Dismiss based on Qualified Immunity (Dkt. 173) is DENIED.

**IT IS SO ORDERED.**

## *REPORT AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE*

DON D. BUSH, United States Magistrate Judge.

Defendants Lynn Swanson and Jackie Bomchill have filed a Motion to Dismiss based on Qualified Immunity (Dkt. 173). As fully set forth below, the Court recommends that the motion be **DENIED**.

### FACTUAL BACKGROUND

Swanson was a principal at Thomas Elementary School in Plano, Texas from 2001–2003. The Wade and Morgan plaintiffs allege that Swanson practiced viewpoint discrimination by prohibiting the distribution of religious items at various "winter break" parties.[1] The offending items included candy cane-shaped pens with an attached message regarding the religious origin of the candy cane. Other items prohibited were pencils with the message, **"Jesus is the Reason for the Season."**

Bomchill is a former principal at Rasor Elementary in Plano. Plaintiff Versher claims that Bomchill prevented her from distributing tickets to a religious drama at a local church. Versher also claims her "half-birthday" party celebration was

---

1. f/k/a Christmas break.

dampened by Bomchill's prohibition of distribution of religious items both in the school cafeteria and on school property after class hours.

### STANDARD

■ Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996). In addition, all reasonable inferences are to be drawn in favor of the plaintiff's claims. *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997). Dismissal for failure to state a claim does not require, however, an appearance that, beyond a doubt, the plaintiff can prove **no set of facts** in support of claim that would entitle him to relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1968, 167 L.Ed.2d 929 (2007). Rather, to survive a 12(b)(6) motion to dismiss, a plaintiff must show, after adequately stating his claim, that it may be supported some set of facts consistent with the allegations in the complaint. *Id.*

■ The issue as to whether these two individuals enjoy qualified immunity mandates a two-step analysis. First, it must be determined whether a constitutional right has been violated on the facts alleged. *McClendon v. City of Columbia,* 305 F.3d 314, 322–23 (5th Cir.2002) (en banc). If so, the next inquiry is whether the right was clearly established. Ultimately, the individuals are entitled to qualified immunity if their conduct was objectively reasonable in light of the legal rules that were clearly established at the time of their actions. *Id.* at 323. Therefore, De-

fendants' conduct is examined as alleged in the complaint. *Id.*

### ANALYSIS

■ Plaintiffs allege that the actions of Defendants here violate their rights to free speech, free exercise of religion, and violate the Establishment Clause. Public officials acting within the scope of their official duties enjoy the protection of qualified immunity to the extent their conduct does not violate clearly established constitutional rights. *Chiu v. Plano Indep. Sch. Dist.,* 339 F.3d 273, 279 (5th Cir.2003).

As a preliminary matter, the Court notes that it has already ruled on Swanson's Motion to Dismiss. The motion was denied (*see* Dkt. 151). Although Swanson alleges that this Motion addresses the Second Amended Complaint, nothing new is presented except Swanson's novel and specious argument that elementary students have no constitutional rights in the area of free speech. The Court has examined its prior reasoning as to Swanson and finds absolutely no reason to change its ruling as to Swanson. Therefore, in light of its prior ruling, Swanson's motion to dismiss should be DENIED.

This leaves for the Court the resolution of Defendants' motion to dismiss as to Jackie Bomchill. Defendants, without hesitation, assert that the United States Constitution does not prohibit viewpoint discrimination against religious speech in elementary schools. Or, conversely, under *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988), schools are free to practice religious viewpoint discrimination when elementary school children are involved.[2] In support of this argument, Defendants assert that no Supreme Court or Fifth Cir-

---

**2.** Although Bomchill and Swanson never articulate what grades comprise elementary, the Court will assume they are referring to grades

1–6. Many districts segregate these grades, labeling 5–6 as intermediate.

cuit case has addressed this specific issue, and, relying on other non-binding circuit cases, request that the Court specifically adopt this premise. Without so much as a cite, Defendants also invoke the name of the founding fathers and assert that they would recoil at the notion that reading, writing, and arithmetic have given way to children determining what messages can be delivered. Of course, Defendants offer the Court no guidance on what course of action the founding fathers would have envisioned.[3] As noted in footnote 3, reference to God in a colonial classroom would be a familiar refrain to the founding fathers, in no way meriting latter day constitutional reprobation. The Court finds no historical basis for Defendants' position in regard to the founding fathers.

■ Defendants also argue that there can be no constitutional violation, since prohibition of viewpoint discrimination has never been extended to the elementary school setting. This is not correct. In *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 115, 121 S.Ct. 2093, 2104, 150 L.Ed.2d 151 (2001), the Supreme Court specifically stated that private religious conduct during non-school hours was not foreclosed merely because it takes place on school premises where elementary school children may be present. Although *Milford* dealt with an after-hours program and not with conduct during school hours, the Court did not seem persuaded by the argument that elementary children should be treated differently.

Defendants rely on a recent decision from the Sixth Circuit. In *Curry ex rel*

*Curry v. Hensiner,* 513 F.3d 570 (6th Cir. 2008), a fifth grade student participated in the school's Classroom City. The student and his mother came up with the idea of selling Christmas tree ornaments in the shape of candy canes. The student's father created cards explaining the religious significance of the candy cane. When the student's partner entrepreneur in the exercise learned that Curry was selling candy canes, he informed Curry that "(n)obody wants to hear about Jesus." As the Sixth Circuit notes, Curry's partner decided to make his own products for sale, "resulting in his (Curry's partner) bearing the burden of both constructing the storefront and making a product for sale." *Curry,* 513 F.3d at 575. Curry was permitted to sell the ornaments, but only without the attached card. The Court notes that Curry received an "A" for the exercise.[4]

The Court held that the *Hazelwood* standard applied, since Classroom City was a curriculum activity. As such, the Court held that school-sponsored speech is subject to greater control by school authorities than speech not so sponsored. *Id.* at 577 (citing *Hazelwood,* 484 U.S. at 271, 108 S.Ct. 562). The Sixth Circuit went on to observe that the school was within its right to prevent the sale of the candy cane product with the accompanying card to avoid subjecting young children to an unsolicited religious promotional message that might conflict with what they are taught at home, and as such, was a valid educational purpose. *Id.* at 579.

---

3. The founding fathers would have been familiar with the *New England Primer* used by students in colonial society. In the 1777 edition, the alphabet study contains the following references:
 A In ADAM's Fall—We sinned all
 B Heaven to find; The Bible Mind
 C Christ crucify'd—For sinners dy'd

D The Deluge drown'd—The Earth around.

4. The project designed to expose young people to business was a success. Both Curry and his partner learned about problems in operating within a partnership and "governmental" regulation.

■ This Court does not read *Curry* as broadly as that advocated by the Defendants. *Curry* recognizes that, for speech to be restricted under the *Hazelwood* standard, there must be a valid educational objective. *Curry* does not hold that there is no right of free speech for elementary students.

Notably, in presenting this Sixth Circuit opinion, it appears to the Court that Defendants chose to ignore another Sixth Circuit opinion that recognized elementary students' right to free speech. In *Rusk v. Crestview Local Sch. Dist.*, 379 F.3d 418 (6th Cir.2004), the Sixth Circuit held that the establishment clause did not bar distribution of flyers advertising religious activities, even in an elementary school setting.

Defendants also rely on *Peck v. Upshur County Bd. of Educ.*, 155 F.3d 274 (4th Cir.1998). In *Peck*, the school board allowed Bibles to be placed on a table for distribution with no other means of expression. The Bibles were available for only one day. The Fourth Circuit held that the practice did not violate the Establishment Clause. The Court did hold that, as to elementary students, the Board's attempt to establish a neutral policy was outweighed by the possibility of coercion in the elementary grades. The Court made its decision based on what it believed the Supreme Court would do when confronted with the question. The Court specifically indicated that it was not convinced that a distinction should be made.

Some six years later, the Fourth Circuit was confronted with the question of whether permitting distribution of flyers regarding religious events in an elementary setting was in violation of the Establishment clause. *See Child Evangelism Fellowship of Maryland, Inc. v. Montgomery County Public Schools*, 373 F.3d 589 (4th Cir. 2004). Although the Circuit did not overrule its prior decision in *Peck*, it specifically cited to the Supreme Court's decision in

*Milford*, an intervening decision, and held that distribution of flyers under the circumstances presented did not violate the Establishment Clause. Again, the Court noted its reluctance at extending its holding in *Peck* to elementary school children.

■ Plaintiffs point out that Defendants essentially ignore sixty-five years of established law, citing *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). In *Barnette*, the Supreme Court faced the difficult wartime decision of whether a state could require young children who were Jehovah Witnesses to participate in a salute and pledge to the flag. The Court held that the children's First Amendment Rights were violated. The Court made no distinction as to age. In fact, any attempt by Defendants to argue that children in public schools, the focus of the Court's attention, does not apply to elementary age children, is pure folly. Moreover, in this case, Judge Schell, in his memorandum opinion and order (Dkt. 132) specifically recognizes that elementary school children have basic First Amendment Rights. As the Supreme Court noted in *Morse v. Frederick*, 551 U.S. 393, 127 S.Ct. 2618, 2623, 168 L.Ed.2d 290 (2007), school students have the constitutional right of free speech, but such right may not be as coextensive with those of adults and must be applied in light of the special characteristics of the school environment.

■ The Court recognizes as well as the Plaintiffs that some speech can be restricted. However, distributing a pencil after school hours bearing the simple message noted above does not encourage illegal activity and certainly cannot be said to be a part of any class activity or sponsored class trip. And the message is certainly not the type of lewd or offensive matter that confronted the Supreme Court in *Bethel School Dist., No. 403 v. Fraser*, 478

U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986).

The Defendants cannot show that an after-hours distribution of a pencil amounts to conduct which might carry the imprimatur of school sanctioned activity. The right of Versher to distribute her pencil is as equal as the right of the potential recipient to refuse it. Therefore, Defendants' counsel's attempt to re-write the Bill of Rights merits no further meaningful discussion. The Court finds that a child's right to freedom of expression is not forfeited simply because of her age. The first prong of consideration is resolved in favor of Plaintiffs.

The second prong of the analysis involves a determination of whether the right was clearly established in light of the specific context of the case. *See generally Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). Citing to a number of cases, Defendants argue that the law was not clearly established that school officials are prohibited from restricting distribution of religious items by elementary students. In analyzing this argument, the Court is guided solely by precedent from this Circuit as well as the Supreme Court. Constitutional concerns regarding the right to religious expression fit into several categories, often overlapping each other. There are, however, many principles that are a given and thus would be clearly established, even to the least informed.

■ A government, by its actions, cannot endorse one religion over another. *County of Allegheny v. ACLU*, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989).[5] Likewise, government may not engage in unconstitutional coercion. *Lee v. Weisman*, 505 U.S. 577, 112 S.Ct. 2649,

120 L.Ed.2d 467 (1992). Neither of the two foregoing situations are before the Court.

■ A government practice may also be unconstitutional if it lacks a secular purpose; the primary effect of such practice either advances or inhibits religion, or it results in an excessively entanglement of government with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–613, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). As the Supreme Court noted in *Lemon*, "[c]andor compels acknowledgment, moreover, that we can only dimly perceive the lines of demarcation in this extraordinarily sensitive area of constitutional law." *Id.* at 613, 91 S.Ct. 2105. Courts have often struggled with the question of when a state's interest in avoiding an Establishment Clause violation may be compelling enough to justify what might be otherwise perceived as discrimination. *See Widmar v. Vincent*, 454 U.S. 263, 271, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). Yet, the Supreme Court has called into question whether a state's interest in avoiding an Establishment Clause violation would justify viewpoint discrimination as opposed to content discrimination. *See Milford*, 533 U.S. at 113, 121 S.Ct. 2093.

Added to the mix are a plethora of cases which often appear inconsistent in the result reached. *See, e.g., Van Orden v. Perry*, 545 U.S. at 692, 125 S.Ct. 2854 ("I join the opinion . . . . . because I think it accurately reflects our current Establishment Clause jurisprudence—or at least the Establishment Clause jurisprudence we currently apply some of the time.") (Scalia, J., concurring). Even the Fifth Circuit has acknowledged that the area of Establishment Clause jurisprudence is "rife with confusion." *Freiler v. Tangipahoa Parish*

---

**5.** The Court notes, however, that the Establishment Clause does not necessarily bar any and all governmental preference for religion

over irreligion. *Van Orden v. Perry*, 545 U.S. 677, 684, n. 3, 125 S.Ct. 2854, 2860, n. 3, 162 L.Ed.2d 607 (2005).

*Bd. of Educ.*, 185 F.3d 337, 342 (5th Cir. 1999).

■■■ However, the matter before the Court does not involve the Establishment Clause but rather a student's right to free speech. The Supreme Court has never held that students may not express their private religious convictions. *See generally Ingebretsen v. Jackson Public Sch. Dist.*, 88 F.3d 274, 281 (5th Cir.1996) (Jones, J., dissenting). In regard to free speech cases involving students, the Supreme Court has held that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Since *Tinker*, the Court has recognized certain limitations noting that the right of students is not coextensive with the right of adults and that student rights must be applied in light of the special characteristics of the school environment. *See Bethel Sch. Dist.*, 478 U.S. at 675, 106 S.Ct. 3159; *Hazelwood*, 484 U.S. at 266, 108 S.Ct. 562; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 283 (5th Cir.2001) (noting that public schools are not unbounded forums for practicing guaranteed First Amendment Rights); *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 615 (5th Cir.2004) (holding that school officials may regulate student speech on school premises if speech would interfere with work of school or impinge on rights of other students).

Certain type of speech is perforce proscribed in a school setting. *Morse v. Frederick*, 551 U.S. 393, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007) (advocating illegal drugs); *Ponce v. Socorro Indep. Sch. Dist.*, 508 F.3d 765 (5th Cir.2007) (threatening Columbine-style attack on school). However, the Court finds that handing out pencils with a religious message, especially after school hours, does not rise to such speech that should be proscribed through state interference or would raise a red flag for any reasonable administrator trying to walk the "Establishment Clause tightrope." It is not the type of speech which would interfere with school work or, in the Court's opinion, impinge on rights of other students. There is no rule that a student has to take any gift from another child.

■■■ Versher's primary complaint with Bomchill concerns Bomchill's prohibition of distributing pencils in the school cafeteria at lunch and after school hours on school property. The pencils bore the message, "Jesus loves me this I know for the Bible tells me so." [6] The right of freedom of speech "embraces the right to distribute literature, and necessarily protects the right to receive it." *Martin v. City of Struthers*, 319 U.S. 141, 143, 63 S.Ct. 862, 87 L.Ed. 1313 (1943). Even Bomchill recognizes that this principle extends to a pencil with a moon. Where she, and evidently the PISD, drew the line is a pencil with a "religious message."

In *Campbell v. St. Tammany Parish School Bd.*, 231 F.3d 937 (5th Cir.2000), the Fifth Circuit held that a school board may open its facilities protected by the First Amendment without inviting political and religious activities. The Court recognized that a limited public forum could enact some restrictions in order for the Board to maintain its neutrality. However, the Circuit's decision was called into question by *Milford*. As the Supreme Court noted in *Milford*, a state's power to restrict speech is not without limitation. Viewpoint discrimination is not permitted. *Milford*, 533 U.S. at 106, 121 S.Ct. 2093. Further, in *Milford*, the Supreme Court

---

6. The first line of this children's hymn was written almost 150 years ago. It is, in its simplest and purest form, nothing more than an expression of an individual child's belief that *she* is loved by Jesus.

specifically stated that Establishment Clause jurisprudence has never been extended "to foreclose private religious conduct during non-school hours merely because it takes place on school premises where elementary school children may be present." *Id.* at 115, 121 S.Ct. 2093.

██ The issue of what speech is protected and under what standard it is analyzed has frequently occupied the Circuit's attention. *See Canady v. Bossier Parish Sch. Bd.,* 240 F.3d 437 (5th Cir.2001). As a general rule, educators retain some right to exercise greater control over school-sponsored student expression than over students' personal speech. *See Hazelwood,* 484 U.S. at 271, 108 S.Ct. 562.

██ In the case sub judice, Versher contends that her right to distribute the pencils in question occurred during school hours and after school hours. Other circuit decisions have upheld the right of schools to prohibit the distribution of pencils in school sponsored activities. *See Walz v. Egg Harbor Tp. Bd. of Educ.,* 342 F.3d 271 (3rd Cir.2003). Without analyzing the scope of limitation permitted during school hours, the Court notes that Versher claims that she was prohibited from distributing pencils after school hours, albeit on school property. This activity could not be fairly characterized as part of the school curriculum. The Supreme Court has observed that, even when a particular legal doctrine is clearly established, "[i]t is sometimes difficult for an [official] to determine how the relevant legal doctrine ... will apply to the factual situation the [official] confronts." *Saucier v. Katz,* 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

██ The Court is not unsympathetic to the plight of teachers and administrators in the constitutional arena of free speech. However, as to after hours conduct, the Defendant fails to demonstrate a valid Establishment Clause concern. And, as to

elementary students, the Court recognizes that many courts have been prone to establish a lower threshold in regard to what is perceived as coercive. *See Peck,* 155 F.3d at 274; *Roe v. Tangipahoa Parish Sch. Bd.,* 2008 WL 1820420 (E.D.La.2008). Nevertheless, based on the allegations in the Second Amended Complaint, the Court finds that, in regard to Versher's distribution of pencils on school property after class hours, the law was clearly established that she had a right to free speech, and Bomchill's actions, in light of the circumstances, were unreasonable. Here, there is no indication that an after-hours exercise in freedom of speech interferes with the work of the school or impinges on the right of Versher's *friends* to either receive or decline to receive the pencils. *See also M.B. ex rel. Martin v. Liverpool Central Sch. Dist.,* 487 F.Supp.2d 117 (N.D.N.Y. 2007) (upholding right of elementary student to distribute flyer with religious message during non-instructional time).

Plaintiff's Second Amended Complaint alleges that Bomchill came out on the school grounds and confronted the child, refusing to let her pass out her pencils (*see* Dkt. 65). According to the Complaint, the child was even threatened with expulsion, and Bomchill called the police on Versher's mother, resulting in a stop by Plano police some blocks from the school. As alleged in the Complaint, Bomchill's conduct, coupled with her reaction to the situation, can hardly be characterized as a reasonable action under the circumstances, and the Court denies Bomchill the relief requested on a Motion to Dismiss.

Therefore, as set forth fully above, the Court finds that Defendants' Motion to Dismiss based on Qualified Immunity (Dkt. 173) should be **DENIED** as to both Swanson and Bomchill.

Within ten (10) days after service of the magistrate judge's report, any party may

serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir.1988).