CATHOLIC HEALTH INITIATIVES COLORADO, d/b/a Villa Pueblo Towers, Petitioner/Cross–Respondent

v.

CITY OF PUEBLO, Colorado, DEPARTMENT OF FINANCE; and Lara Barett as Director, Respondents/Cross–Petitioners.

No. 07SC905.

Supreme Court of Colorado,
En Banc.

March 30, 2009.

As Modified on Denial of Rehearing
June 1, 2009.*

---

* Justice Hobbs, Justice Rice, and Justice Eid would grant the petition.

Mark L. Sabey, Kutak Rock LLP, Denver, Colorado, Attorney for Petitioner/Cross–Respondent.

Thomas E. Jagger, Robert P. Jagger, Pueblo, Colorado, Attorneys for Respondent/Cross–Petitioner.

Hale Friesen LLP, Peter J. Krumholz, Richard A. Westfall, Denver, Colorado, Attorneys for Amicus Curiae The Catholic Health Association of the United States.

Holme Roberts & Owen LLP, Stuart J. Lark, Colorado Springs, Colorado, Attorneys for the Amici Curiae Association of Christian Schools International, Azusa Pacific University, Bethesda Ministries, Christian Camp and Conference Association, Colorado Christian University, Compassion International, Cook Communications Ministries, Denver Rescue Mission, Focus on the Family, HCJB Global, International Students, Inc., The Catholic Foundation for the Roman Catholic Church in Northern Colorado, The Christian and Missionary Alliance, The Navigators, World Vision, Youth for Christ and YMCA of the Rockies.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

Catholic Health Initiatives Colorado ("Catholic Health"), a non-profit organization affiliated with the Roman Catholic Church, operates Villa Pueblo Towers ("Villa Pueblo"), a facility providing care and housing for the elderly in Pueblo, Colorado. The City of Pueblo audited Villa Pueblo and ultimately issued a Notice of Assessment for $22,587.68 in unpaid sales and use taxes. Catholic Health challenged this assessment, arguing Villa Pueblo is exempt from all sales and use taxes by virtue of section 14–4–76, Pueblo, Colo., Mun.Code (2008), which provides an exemption for certain charitable organizations.

Catholic Health appealed the assessment to the Department of Revenue, which upheld it. Catholic Health then appealed to the Arapahoe County District Court, which also found Villa Pueblo was not exempt from taxation. The court of appeals reversed the trial court, holding the operation of Villa Pueblo was a religious activity and, thus, exempt from sales and use taxes. *Catholic Health Initiatives Colo. v. City of Pueblo*, 183 P.3d 612 (Colo.App.2007).

We granted certiorari and now reverse the judgment of the court of appeals. Applying the plain language of the City of Pueblo tax code, we find Villa Pueblo, although a religious organization, is not entitled to a tax exemption under our interpretation of the code. Our interpretation is based on the plain meaning of the code, but supported by the obligation to interpret it in a way that does not cause unnecessary constitutional conflicts. Utilizing this understanding of the code, we find Catholic Health's Establishment Clause and Free Exercise Clause arguments to be without merit. We therefore reverse the judgment of the court of appeals, but remand to give the parties an additional opportunity to raise issues that were not addressed under the previous, incorrect interpretation of the code, and to present evidence in support of those issues.

## II. Stipulated Facts and Procedural History

Catholic Health is a not-for-profit organization affiliated with the Roman Catholic Church and exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code. To Catholic Health, providing housing and care for the elderly is a religious activity motivated by religious belief. Catholic Health provides services and advocates for the elderly in accordance with its mission, and provides care and housing for the elderly as part of the religious mission of the Catholic Church.

To this end, Catholic Health owns and operates Villa Pueblo, a facility providing care and housing to the elderly. Residents at Villa Pueblo have an average age of eighty seven. Villa Pueblo is a full service elderly

care community consisting of independent living units, assisted living units, and a nursing facility. Villa Pueblo holds itself out to the general public as a religious organization. Villa Pueblo employees are required to respect and uphold the religious mission of Villa Pueblo and adhere to Catholic Church directives.

Villa Pueblo's facilities include a chapel for use by residents. Services are conducted at the chapel on a bi-weekly basis. Villa Pueblo pays for an on-site chaplain who is available twenty-four hours a day, seven days a week. The chaplain interviews and completes spiritual assessments of, and spiritual care plans for, all residents.

Residents at Villa Pueblo must pay an "entrance endowment," as well as a monthly fee. The entrance endowment consists of an individually specified amount of money in consideration for the life occupancy privilege of an apartment. The independent living units range in size from 476 to 1,092 square feet. Monthly fees for the independent living facilities range from $1,130 to $2,347, depending on the desirability of the unit and the number of residents in the unit. Monthly rates for assisted living and nursing care facilities are higher. From mid–1997 through mid–2000, approximately half of Villa Pueblo's residents were on life-care contracts, paying below market rates for their accommodations. Villa Pueblo is losing money on its life-care contract program. Villa Pueblo accepts some residents who are unable to pay normal and customary charges.

Catholic Health's occupancy agreement states:

> Occupant further agrees to pay said monthly charge at the time and in the manner specified by the Home and upon failure to do so, the Home shall have the right to terminate and cancel this Agreement if any such payment shall be in default more than ninety (90) days without obligation to make refunds of money heretofore paid pursuant thereto. However, so long as the Home is financially able to assume the cost, no Occupant's residency shall be terminated because of the inability of the Occupant to pay this monthly care and service charge or any other payments provided for in this Agreement.

Villa Pueblo is open to the general public, but its advertisements target individuals who have sufficient income and assets to bear the monthly fee. Marketing brochures describe Villa Pueblo as "everything you want in a retirement lifestyle," and "affordable," with many residents finding the cost to be "less than the cost of owning and maintaining" their former single family home.

The City of Pueblo conducted a tax audit of Villa Pueblo for the period of June 1, 1997 through May 31, 2000. As a result of that audit, the City issued a Notice of Assessment in the amount of $106,931.33 in unpaid taxes. Catholic Health protested the assessment and provided documentation to the City that resulted in a reduction in the assessment.[1] Upon review, the City maintained Catholic Health owed $22,587.68 in taxes.[2] Catholic Health challenges the imposition of any assessment, believing Villa Pueblo to be entirely exempt from sales and use tax under section 14–4–76 of the City of Pueblo tax code, which exempts "charitable organizations" from sales or use taxes incurred "in the conduct of their regular religious or charitable functions and activities." § 14–4–76, Pueblo, Colo., Mun.Code (2008). The Pueblo municipal code defines "charitable organization":

---

1. The parties stipulated that the City reduced the assessment of Catholic Health's tax, but the stipulated facts contain no information regarding the reason for the decrease. In argument, the parties suggest different reasons for the reduction. While the City refers to the reduction as "a partial exemption," Catholic Health argues "[t]here is absolutely no evidence in the record that the City granted a partial exemption for religious activities," and "[t]he [C]ity failed to present to the Court below any evidence about the reasons the assessment was reduced and cannot introduce new facts on appeal by argu-

ment of counsel." We rely on the facts as presented in the statement of stipulated facts, and thus proceed without an explanation for the reduction.

2. The amount in controversy is as follows:

| | |
|---|---|
| Sales Tax | $ 1,701.00 |
| Use Tax | $ 17,154.73 |
| Interest | $ 3,731.95 |
| Total | $ 22,587.68 |

*Charitable organization* means any entity which:

a. Has been certified as a not-for-profit organization under Section 501(c)(3) of the Internal Revenue Code; and

b. Is a religious or charitable organization.

As used in this definition, a *charitable organization* is an organization which exclusively, and in a manner consistent with existing laws and for the benefit of an indefinite number of persons, freely and voluntarily ministers to the physical, mental or spiritual needs of persons, and which thereby lessens the burdens of government.

§ 14–4–21(5) Pueblo, Colo., Mun.Code (italics in original).

In a letter dated May 1, 2001, Catholic Health outlined its argument for eligibility under the exemption for the City of Pueblo Finance Director. Catholic Health claimed the third part of this definition, which begins "[a]s used in this definition" applied only to charitable organizations, thereby exempting religious organizations from its many requirements. Under this interpretation, Catholic Health claimed it was entitled to a sales and use tax exemption for all aspects of the operation of Villa Pueblo because: (1) Catholic Health has a 501(c)(3) tax status, (2) Catholic Health is a religious organization, and (3) the operation of Villa Pueblo is in Catholic Health's regular religious functions or activities.

The City of Pueblo Director of Finance replied, rejecting Catholic Health's request for the exemption. The City explained the operation of Villa Pueblo had several characteristics of a for-profit enterprise, suggesting that it did not meet the third paragraph of the "charitable organization" definition because it did not offer its services "freely and voluntarily," in a manner consistent with charity. However, the City went on to state that "[t]angible personal property or taxable services sold or used in the charitable activities of Villa Pueblo are exempt from City of Pueblo sales and use tax," implying Catholic Health received some partial exemption, presumably on the basis of their satisfaction of the "charitable organization" definition.

Thus, the City of Pueblo seemed to suggest that although Catholic Health failed to meet the definition of a charitable organization, it was still entitled to at least a partial sales and use tax exemption.

Catholic Health appealed the City's assessment to the Executive Director of the Department of Revenue of the State of Colorado, as provided for in section 29–2–106.1(3), C.R.S. (2008). The Department of Revenue held Catholic Health did not operate Villa Pueblo as a religious activity, nor did it fall within the definition of "charitable organization" as set forth in the City of Pueblo's tax code. Thus, the Department of Revenue characterized the tax code as providing two distinct forms of exemptions: one for religious organizations undertaking religious activity, and one for charitable organizations undertaking charitable activity that met the requirements of the third paragraph of the "charitable organization" definition.

Utilizing this interpretation, the Department of Revenue found Catholic Health was not entitled to either category of exemption. Regarding the religious exemption, the Department found "the purpose of Villa Pueblo is to provide housing, not to provide religious services," thus falling outside of "regular religious ... functions and activities." Final Determination DD–578, 4, Dept. of Revenue of the State of Colo., Mar. 15, 2004. Turning to the charitable exemption, the Department relied heavily on our opinion in *United Presbyterian Association v. Board of County Commissioners of the County of Jefferson*, 167 Colo. 485, 448 P.2d 967 (1968), and held the operation of Villa Pueblo was not charitable in nature. Noting that "[n]ew residents are targeted based on financial resources; fees are based on amenities and services provided; fees are subject to change; accommodations are touted; and, the obligation for financial assistance is highly attenuated," the Department found "a quid pro quo permeates the entire operation of Villa Pueblo." Final Determination DD–578, 5.

Catholic Health appealed this administrative finding to the Arapahoe County District Court. The parties waived trial and submitted the case to the district court based on

stipulated facts. Catholic Health, believing the City's tax code created two distinct types of exemptions, filed a Notice of Waiver, seeking "to base its claim for exemption exclusively on its claim that the operation of Villa Pueblo is a religious activity of a religious organization." The trial court interpreted this waiver as limiting Catholic Health's "claim on appeal to the issue of religious exemption, as opposed to charitable exemption."

The trial court, therefore, did not consider the section of the municipal code defining "charitable organizations." Rather, it addressed only whether Catholic Health operated Villa Pueblo "in the conduct of their regular religious or charitable functions and activities," pursuant to section 14–4–76 of the code. The trial court found religion did not pervade the operation of Villa Pueblo and thus Villa Pueblo was not, as a whole, a religious function. The trial court held Villa Pueblo's typical religious functions, such as purchases necessary for the operation of the chapel, were exempt from taxation, while its secular functions, such as the purchase of refrigerators or stoves, were not exempt from sales and use taxes.

Catholic Health again appealed. Continuing the trial court's focus on the question of what constitutes a "religious activity," the court of appeals relied on our decision in *Maurer v. Young Life*, 779 P.2d 1317 (Colo. 1989), holding every aspect of Villa Pueblo was a religious activity and, as a result, the facility enjoyed complete exemption from sales and use tax under the City of Pueblo tax code. *Catholic Health Initiatives Colorado*, 183 P.3d at 612–13. In reaching this determination, the court focused on the activities undertaken by Villa Pueblo, as well as the fact that the facility was operating at a loss. *Id.* at 617–19. The court of appeals did not address whether Catholic Health was a

"charitable organization" as defined by the City of Pueblo tax code.

Catholic Health petitioned this court to grant a writ of certiorari, arguing the court of appeals applied an incorrect and unconstitutional test for religious activity. Catholic Health contends the court of appeals erred in determining whether an organization is engaged in religious activity by examining the nature or scope of the organization's activities. Rather, Catholic Health argues reviewing courts may utilize only a bright line test to evaluate whether the activities of an organization are motivated by a sincerely held religious belief.

The City of Pueblo filed a cross-petition, arguing Villa Pueblo does not fall within the tax code's definition of charitable organizations entitled to a sales and use tax exemption. The City of Pueblo contends the code creates a single tax exemption for "charitable organizations," which may be either religious or secular. Under this interpretation, all organizations must comply with the requirements set forth in the third paragraph of the "charitable organization" definition in order to qualify for a sales and use tax exemption.

We granted certiorari on both petitions[3] and now reverse.

### III. Analysis

#### A. Standard of Review

We review appeals of tax assessments de novo. § 29–2–106.1(7), C.R.S. (2008). We "construe tax exemptions narrowly, and in favor of the taxing authority." *Gen. Motors v. City and County of Denver*, 990 P.2d 59, 70 (Colo.1999). As a general rule, "the presumption is against tax exemption and the burden is on the one claiming exemption to establish clearly the right to such relief." *Maurer*, 779 P.2d at 1333 n. 20.

**3.** We granted certiorari on the following issues:
 1. Whether the court of appeals applied the proper test for religious activity.
 2. Whether the test for religious activity applied by the court of appeals, with which Catholic Health must comply continually to retain its tax exemption, and which the City of Pueblo must apply in subsequent audits, is unconstitutional and creates an ongoing chilling and entangling effect.

 3. Whether the court of appeals erred in its interpretation and application of the City's sales and use tax exemption for religious organizations by applying a rule of broad and liberal construction which has heretofore been limited to property tax exemptions under Colorado Constitution, art. X, § 5.

"Every reasonable doubt should be resolved against" the tax exemption. *United Presbyterian Assoc.*, 167 Colo. at 496, 448 P.2d at 972–73.

## B. Applicable Constitutional Standards

■ The First Amendment of the United States Constitution provides government "shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. Both the Establishment Clause and the Free Exercise Clause can be implicated by the application of tax statutes to religious organizations.

### 1. The Establishment Clause

■ The Establishment Clause mandates equal treatment of different religious and secular actors. A tax which makes distinctions based on religious belief would violate the Establishment Clause. "The risk that governmental approval of some and disapproval of others will be perceived as favoring one religion over another is an important risk the Establishment Clause was designed to preclude." *United States v. Lee*, 455 U.S. 252, 263 n. 2, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) (Stevens, J., concurring).

The United States Supreme Court addressed the impact of tax exemptions on this perception of impartiality in *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989) (Brennan, J., plurality opinion). In *Texas Monthly*, the state of Texas exempted religious periodicals and books from sales tax, while imposing that tax on other nonreligious publications. *Id.* at 5, 109 S.Ct. 890. The Court, noting that "[e]very tax exemption constitutes a subsidy that affects nonqualifying taxpayers," held the tax exemption violated the Establishment Clause. *Id.* at 14, 109 S.Ct. 890. The Court went on to outline the proper, constitutionally valid approach to religious tax exemptions. *Id.* at 14–15, 109 S.Ct. 890. It held that, when a subsidy "is conferred upon a wide array of nonsectarian groups as well as religious organizations in pursuit of some legitimate secular end, the fact that religious groups benefit incidentally" does not violate the Establishment Clause. *Id.* However, "when government directs a subsidy exclusively to religious organizations" in a way that "either burdens nonbeneficiaries markedly or cannot reasonably be seen as removing a significant state-imposed deterrent to the free exercise of religion," the tax exemption "provide[s] unjustifiable awards of assistance to religious organizations and cannot but conve[y] a message of endorsement" of religion.[4] *Id.* (internal citations omitted).

■ Thus, in order for a sales tax exemption to comply with the Establishment Clause, it must serve a broad secular purpose. If the work of a religious organization falls within that secular purpose, it may properly enjoy the tax exemption. However, a tax exemption may not be awarded to religious organizations simply because they are religious. *Id.*

■ A statute or ordinance also violates the Establishment Clause when it fosters " 'an excessive government entanglement with religion.' " *Lemon v. Kurtzman*, 403 U.S. 602, 614, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (quoting *Walz v. Tax Comm'n of City of New York*, 397 U.S. 664, 674, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970)); *see Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints v. Amos*, 483 U.S. 327, 336, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987) ("[I]t is a significant burden on a religious organization to require it, on pain of substantial liability, to predict which of its activities a secular court will consider religious."). Our precedents have attempted to avoid this type of entanglement by adopting a broad view, exempting "necessarily incidental" property and activities of the religious organization entitled to a tax exemption. We adopted this reasoning in *Maurer*, 779 P.2d 1317, where we interpreted a similarly word-

---

4. Although this is the plurality opinion, we read Justice Blackmun's concurrence as consistent with the majority rationale on this issue. This is consistent with interpretations by other courts, which understood the plurality's reasoning to be controlling. *See, e.g., Rusk v. Crestview Local School Dist.*, 379 F.3d 418, 423 (6th Cir.2004); *Warren v. C.I.R.*, 282 F.3d 1119, 1121 (9th Cir. 2002); *Children's Healthcare is a Legal Duty, Inc. v. Min De Parle*, 212 F.3d 1084, 1095 (8th Cir. 2000).

ed tax exemption for religious property contained in the Colorado Constitution. In *Maurer*, we held a religious organization was also entitled to an exemption for that property "necessarily ·incidental to the exempted primary uses." [5] *Id.* at 1335.

 Thus, generally, a tax exemption will comply with the Establishment Clause when it sets forth broad secular standards, which either charitable or religious organizations may satisfy. If the qualifying organization is religious in nature, the taxing authority should exempt uses or activities that are "necessarily incidental" to the primary function of the organization, in order to avoid excessive entanglement between the taxing authority and the organization.

### 2. The Free Exercise Clause

 If a tax code meets the standards of *Texas Monthly*, it does not violate the Free Exercise Clause even if a religious organization cannot meet the secular exemption standards contained in the tax code. The mere imposition of a sales tax does not create the type of untenable burden on the exercise of religion forbidden by the Free Exercise Clause. The type of government intrusions that violate the Free Exercise Clause are "far more invasive than the level of contact created by the administration of neutral tax laws." [6] *Jimmy Swaggart Ministries v. Bd. of Equalization of Cal.*, 493 U.S. 378, 395–96, 110 S.Ct. 688, 107 L.Ed.2d 796 (1990).

 Moreover, the imposition of a sales and use tax upon a religious organization does not, in and of itself, violate the Free Exercise Clause by placing an untenable bur-

den on the practice of religion. A state or local government is not required by the Free Exercise Clause to exempt religious organizations from sales and use taxes. *Texas Monthly*, 489 U.S. at 19, 109 S.Ct. 890 (Brennan, J., plurality opinion) (recognizing a state is under no obligation to make individualized exemptions from sales taxes, even if a religious group is capable of successfully demonstrating payment of that sales tax would violate their religious tenets).

The Supreme Court has stated that "[e]ven a substantial burden [on religion] would be justified by the 'broad public interest in maintaining a sound tax system,' free of 'myriad exceptions flowing from a wide variety of religious beliefs.'" *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699–700, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989) (quoting *Lee*, 455 U.S. at 260, 102 S.Ct. 1051); *see also Jimmy Swaggart Ministries*, 493 U.S. at 394, 110 S.Ct. 688 ("[I]t is undeniable that a generally applicable tax has a secular purpose and neither advances nor inhibits religion, for the very essence of such a tax is that it is neutral and nondiscriminatory on questions of religious belief.").

 Our state constitution does not require religious organizations be exempt from sales and use taxes. Rather, sales and use tax exemptions are granted at the discretion of the taxing authority. In *Young Life v. Division of Employment and Training*, 650 P.2d 515, 525 (Colo.1982), we held the imposition of unemployment taxes posed only an "incidental burden" to a religious organization. As we explained, "[i]f the state regulates conduct by enacting a general law within its power, the purpose and effect of which

---

**5.** *Maurer v. Young Life* addresses a constitutional provision exempting "[p]roperty, real and personal, that is used solely and exclusively for religious worship" from property taxation, which is inapplicable here. 779 P.2d 1317, 1331 (Colo. 1989) (examining Colo. Const. art. X § 5). We have consistently interpreted Colo. Const. art. X § 5 as applying only to property taxes imposed by the state. *See Bd. of Assessment Appeals v. AM/FM Intern.*, 940 P.2d 338, 343 (Colo.1997); *United Presbyterian Assoc. v. Bd. of County Comm'rs of the County of Jefferson*, 167 Colo. 485, 492, 448 P.2d 967, 971 (1968). As such, beyond its utility as an example of courts adopting a broad view of religious activity in an at-

tempt to avoid entanglement, it is inapplicable to this case.

**6.** The City of Pueblo's charitable sales and use tax exemption is neutral on its face. While "[f]acial neutrality is not determinative" of the Free Exercise analysis, *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), the record is devoid of any evidence that the City of Pueblo has applied its code in a discriminatory way. In addition, Catholic Health has not, at any point in these proceedings, argued the code was applied in a discriminatory fashion.

is to advance permissible goals of the state, a statute may be valid despite its indirect burden on religious observance." *Id.* at 524. We have never found the imposition of a sales and use tax with a broad, secular purpose to inflict the type of "coercive effect against [the] practice of religion," *Destefano v. Grabrian,* 763 P.2d 275, 283 (Colo.1988), constituting a violation of the Free Exercise Clause.

## C. Pueblo's Sales and Use Tax Exemption

The City of Pueblo has elected to exempt "charitable organizations" from sales and use taxes incurred "in the conduct of their regular religious or charitable functions and activities." § 14–4–76, Pueblo, Colo. Mun.Code. The tax code goes on to define "charitable organization":

> *Charitable organization* means any entity which:
>
> a. Has been certified as a not-for-profit organization under Section 501(c)(3) of the Internal Revenue Code; and
>
> b. Is a religious or charitable organization.
>
> As used in this definition, a *charitable organization* is an organization which exclusively, and in a manner consistent with existing laws and for the benefit of an indefinite number of persons, freely and voluntarily ministers to the physical, mental or spiritual needs of persons, and which thereby lessens the burdens of government.

§ 14–4–21(5) Pueblo, Colo., Mun.Code (italics in original). This definition is circular, in that it uses the phrase "charitable organization" to define itself.

The parties' assumptions regarding the interpretation of this definition caused this case to develop in a somewhat confused way. Both parties have agreed to the stipulated facts set forth at the trial court level, but they nonetheless adopt significantly different interpretations of these facts, which lead to conflicting logical conclusions.

For example, the parties stipulated that "Catholic Health is a religious organization" with "not-for-profit 501(c)(3)" status. Joint Waiver of Trial and Submission of Case Based on Stipulated Facts, 2–3. Catholic Health believes these stipulated facts are effectively akin to stipulating that Catholic Health meets the "charitable organization" definition. Under Catholic Health's interpretation of the definition, a religious organization with 501(c)(3) status is a charitable organization. Catholic Health believes the third paragraph, which sets forth a variety of additional requirements an organization must meet to be deemed a "charitable organization," applies only to charitable organizations as listed in subsection (b) of the definition, and is thus inapplicable to religious organizations.

However, the City of Pueblo, under its interpretation of the definition, reaches an entirely different conclusion based on the same stipulated facts. The City of Pueblo reads the third paragraph of the definition as applying to all charitable organizations under the definition, including religious organizations. Thus, under this interpretation, even if Catholic Health is a 501(c)(3) religious organization, it must still "exclusively, and in a manner consistent with existing laws and for the benefit of an indefinite number of persons, freely and voluntarily [minister] to the physical, mental or spiritual needs of persons, [thereby lessening] the burdens of government" in order to qualify for a sales and use tax exemption. § 14–4–21(5).

Thus, we examine the code and explain our understanding of the sales and use tax exemption.

### 1. Interpretation of the Exemption

■ The plain language of the tax exemption supports the interpretation that any organization, including religious organizations, must meet the requirements of the third paragraph in order to be entitled to an exemption. The interpretation argued by Catholic Health, that all religious organizations enjoying 501(c)(3) status are entitled to an exemption, has one of two effects. First, it can essentially eliminate the third paragraph of the definition. Second, this reading may be premised on the limited applicability of the third paragraph, applying the organizational requirements only to "charitable or-

ganizations" as used in paragraph (b) of the definition, rather than the overarching definition; this essentially exempts religious organizations from these programmatic requirements. Nonetheless, proceeding from the flawed premise that all religious 501(c)(3) organizations are entitled to a tax exemption, the operative question for a reviewing court would be whether the operation of Villa Pueblo was a religious activity. Finding no definition of religious activity in the City of Pueblo tax code, the trial court and the court of appeals turned to principles of constitutional law in an attempt to define the scope of religious activity.

■■■ However, we disagree with this interpretation. When construing a statute, we analyze it as a whole, "ascribing to each word and phrase its familiar and generally accepted meaning," assuming the drafters intended "that meaning should be given to each word." *Dep't of Transp. v. Stapleton*, 97 P.3d 938, 943 (Colo.2004). In order to give full meaning to all words and phrases in the tax code's definition, we believe the third paragraph must not be idly eliminated. Rather, the third paragraph sets forth the overarching operational characteristics all "charitable organizations," including religious organizations, must have in order to be eligible for the tax exemption. In other words, we believe the third paragraph is intended to modify the first sentence of the definition.

Under our interpretation, the definition, by its plain language, incorporates two requirements. First, the organization must be a 501(c)(3) that is either religious or charitable in nature. Second, the organization must "exclusively, and in a manner consistent with existing laws and for the benefit of an indefinite number of persons, freely and voluntarily [minister] to the physical, mental or spiritual needs of persons," thereby lessening "the burdens of government." § 14–4–21(5) Pueblo, Colo., Mun.Code. Thus, an organization does not automatically qualify for a sales tax exemption simply because it is a religious or charitable organization with 501(c)(3) status. Rather, the organization must be engaged in qualifying activities in order to be eligible for the exemption.

We reach this conclusion for three reasons. First, the City of Pueblo, in drafting the tax code, made the affirmative decision to emphasize the first and the third instances of the phrase "charitable organization," thereby equating the two phrases and indicating the requirements of the third paragraph were intended to apply to all charitable organizations, rather than only those nonreligious charitable organizations.

Second, the use of the word "or" in subpart (b) of the definition indicates there are two categories of charitable organizations— charitable and religious—which may satisfy the definition. *See May Dep't Stores Co. v. State ex rel. Woodard,* 863 P.2d 967, 976 (Colo.1993) (interpreting "or" as demarcating different categories). In other words, charitable and religious organizations are two categories within an overarching group of "charitable organizations," as defined by the code. For our purposes, whether an organization is religious or charitable in nature is immaterial, because they are treated the same way under the code.

Third, the section of the code actually setting forth the exemption states that "charitable organizations" are exempt from sales and use taxes incurred "in the conduct of their regular religious or charitable functions and activities." § 14–4–76. It does not exempt "charitable or religious organizations" from those sales and use taxes. The plain meaning seems to require that religious organizations which meet the requirements of the definition are a subset of charitable organizations, rather than a distinct group, separately entitled to a tax exemption.

### a. Catholic Health's "waiver" of charitable exemption

We do not believe Catholic Health's self-described "waiver" of its charitable exemption claim requires us to adopt its interpretation of the tax exemption. Catholic Health interprets the code as offering two distinct types of exemptions—one for religious organizations which, if they enjoy 501(c)(3) status, are entitled to an exemption for all taxes incurred "in the conduct of their regular religious ... functions and activities," and a separate exemption for charitable organiza-

tions, which, in addition to being 501(c)(3) organizations, must also meet the far stricter guidelines of the third paragraph of the definition before they will be entitled to exemptions for their "regular ... charitable functions and activities." Thus, Catholic Health understood its waiver as electing to pursue only the religious exemption claim.

However, under the City of Pueblo's interpretation of its code, such a waiver is problematic, for one of two reasons. First, the code may disallow any waiver of the charitable exemption argument, because all exemptions for religious organizations fall within the broader category of charitable organization exemptions. Second, the code could be seen to accommodate a waiver, but only insofar as it signifies a party's self-identification with one type of organization entitled to an exemption if the necessary prerequisites are met—in this case, opting to identify as a religious organization, while still recognizing the applicability of the definition's third paragraph.

Catholic Health's waiver is based on its incorrect interpretation of the tax code. Given our understanding of the code, we presume Catholic Health intended its waiver to merely clarify its identification as a religious organization, rather than a waiver of its entire claim.

### b. Constitutional considerations in interpretation

■ Although our interpretation of the code stems from its plain meaning, our view is also supported by our obligation to "avoid interpretations that invoke constitutional deficiencies." *Adams County Sch. Dist. No. 50 v. Heimer*, 919 P.2d 786, 792 (Colo.1996). By adopting this plain language interpretation of the "charitable organization" definition, we avoid a potential constitutional conflict created by Catholic Health's interpretation. Catholic Health contends all religious organizations with 501(c)(3) status should be entitled to a sales and use tax exemption. However, the United States Supreme Court has held such a subsidy, directed exclusively to religious organizations, which "either burdens non-beneficiaries markedly or cannot reasonably be seen as removing a significant

state-imposed deterrent to the free exercise of religion ... provide[s] unjustifiable awards of assistance to religious organizations and cannot but conve[y] a message of endorsement" of religion, in violation of the Establishment Clause. *Texas Monthly*, 489 U.S. at 14–15, 109 S.Ct. 890 (Brennan, J., plurality opinion) (internal citations omitted). Catholic Health's interpretation would carve out a tax exemption for religious organizations solely as a result of their religious nature, rather than the work of the organization. Such an exemption would put other secular organizations, engaged in exceedingly similar activities, at a marked competitive disadvantage.

Many of the constitutional arguments involved in this case arise from an interpretation of the code we reject. In contrast, the interpretation we adopt today complies with constitutional requirements. In order for a sales tax exemption to comply with the Establishment Clause, it must serve a broad secular purpose. If the work of a religious organization falls within that secular purpose, it may properly enjoy the tax exemption. The tax code's definition of "charitable organization" has the properly broad, secular purpose of lessening the burdens of government. *See Bob Jones Univ. v. U.S.*, 461 U.S. 574, 591, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983) (explaining that charitable exemptions are justified where they benefit society by, for example, supplementing and advancing the work of public institutions already supported by tax revenue). The tax code extends the tax exemption to religious organizations that satisfy this secular purpose, rather than bestowing tax exemptions upon religious organizations simply by virtue of their religious nature.

We have held tax exemptions comply with the Establishment Clause where "the scope of the exemption is instrumental in facilitating fair administration of the system" and where "the exemption makes distinctions based on real differences related to the purposes of the system." *Young Life*, 650 P.2d at 521. Here, the City of Pueblo created a tax exemption to benefit those organizations engaged in charitable work. It sets forth concrete, secular standards by which it will

evaluate whether organizations, including religious organizations, are eligible for the tax exemption. These standards are necessary, in that they provide the City with an objective measure by which to determine eligibility for the tax exemption. The criteria are based on "real differences," such as the type of work undertaken by the organization, as well as whether that work is transactional or charitable. Thus, we hold the City of Pueblo tax code, applied as written, complies with the Establishment Clause.

However, Catholic Health argues the application of the City of Pueblo's tax code nonetheless violates the Establishment Clause by creating an improper entanglement between government and religion. A statute or ordinance violates the Establishment Clause when it fosters " 'an excessive government entanglement with religion.' " *Lemon v. Kurtzman,* 403 U.S. 602, 613, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (quoting *Walz v. Tax Comm'n of City of N.Y.,* 397 U.S. 664, 674, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970)). Catholic Health alleges excessive entanglement has occurred here because the City of Pueblo will be forced to examine Villa Pueblo's operation in order to determine which aspects of the organization qualify for the tax exemption.

The trial judge's order would have created this type of entanglement because it held "religious exemptions will apply to regularly [related] religious functions, and other than that, for all secular functions like refrigerators and stoves, Villa Pueblo must pay sales and use tax to the City of Pueblo when applicable." Trial Ct. Order, 2–3. While this holding was replaced by the contrary, yet similarly incorrect, holding of the court of appeals, we find the trial judge's reasoning to be representative of an order that would violate the Establishment Clause. *See Amos,* 483 U.S. at 336, 107 S.Ct. 2862.

The interpretation of the code we adopt today also complies with the Free Exercise Clause. The City of Pueblo's imposition of a sales and use tax upon a religious organization does not, in and of itself, violate the Free Exercise Clause by placing an untenable burden on the practice of religion. Catholic Health has not argued the payment of sales tax, in and of itself, violates its sincerely held religious beliefs. Rather, it argues the imposition of a sales and use tax incidentally burdens Catholic Health's ability to practice an unrelated tenet of its religious belief. However, such arguments have been roundly rejected by the United States Supreme Court as failing to constitute a violation of the Free Exercise Clause. *See Hernandez,* 490 U.S. at 700, 109 S.Ct. 2136 (rejecting the argument that an incrementally larger tax burden interferes with religious activities and further stating such an argument "knows no limitations").

However, even if the payment of sales and use tax violates some aspect of a religious organization's sincerely held religious belief, this would still not violate the Free Exercise Clause. A state or local government is not required by the Free Exercise Clause to exempt religious organizations from sales and use taxes. *Texas Monthly,* 489 U.S. at 19, 109 S.Ct. 890 (Brennan, J., plurality opinion) (recognizing a state is under no obligation to make individualized exemptions from sales taxes, even if a religious group is capable of successfully demonstrating payment of that sales tax would violate their religious tenets); *see also Hernandez,* 490 U.S. at 699–700, 109 S.Ct. 2136 ("[E]ven a substantial burden [on religion] would be justified by the 'broad public interest in maintaining a sound tax system,' free of 'myriad exceptions flowing from a wide variety of religious beliefs.' " (quoting *Lee,* 455 U.S. at 260, 102 S.Ct. 1051)).

### 2. Operation of Villa Pueblo Does Not Satisfy the Requirements of the Exemption

■ Having adopted this interpretation of the charitable organization definition language, which requires all charitable organizations, including religious organizations, to comply with the terms of the third paragraph, we turn now to whether Catholic Health meets the definition of "charitable organization."

The trial court held Villa Pueblo's religious activities should be exempt from sales and use taxes, while secular activities could be appropriately taxed. However, we believe

the trial court arrived at this conclusion by misapplying the City of Pueblo's tax code. The tax code does not provide an exemption for all religious organizations engaged in their "regular religious activity," as Catholic Health suggests. Rather, the tax code provides a tax exemption to organizations, which may or may not be religious, that "exclusively, and in a manner consistent with existing laws and for the benefit of an indefinite number of persons, freely and voluntarily [minister] to the physical, mental or spiritual needs of persons, and which thereby [lessen] the burdens of government." § 14-4-21(5). Thus, a religious 501(c)(3) organization that does not meet these operational requirements will not be entitled to a tax exemption, regardless of whether the organization's activities are motivated by a sincerely held religious belief.

We believe the court of appeals similarly misunderstood the City of Pueblo's "charitable organization" definition. Starting from the same incorrect interpretation of the "charitable organization" definition, the court of appeals determined Catholic Health was a charitable organization because it was a religious organization with 501(c)(3) tax status. *Catholic Health Initiatives Colorado*, 183 P.3d at 612-13. As a result, the court of appeals believed the only question remaining to be resolved was "whether the operation of Villa Pueblo is a religious activity or function." *Catholic Health Initiatives Colo.*, 183 P.3d at 615. Relying on our opinion in *Maurer*, the court of appeals proceeded to assess the religious nature of Villa Pueblo by examining the nature of the activities undertaken by Catholic Health.[7] *Catholic Health Initiatives Colo.*, 183 P.3d at 617 (citing *Maurer*, 779 P.2d at 1330-31). However, under the City of Pueblo's tax code, we only reach the question of whether an activity is religious if the organization seeking exemp-

tion for that activity meets the "charitable organization" definition.

The operation of Villa Pueblo is not a "charitable organization" under the City of Pueblo's code, for two principal reasons. First, Villa Pueblo's ministry to the physical, mental, and spiritual needs of residents is not exclusively free and voluntary Second, the work of Villa Pueblo does not exclusively "lessen the burden of government."

Based on the stipulated facts, it is clear Villa Pueblo operates in order to care for residents' physical, mental and spiritual needs; nursing services, social and recreational facilities, meal delivery, and a multidenominational chapel are provided for residents. However, these services are not exclusively provided "freely and voluntarily." Rather, they are provided on a quid pro quo transactional basis. If a resident requires more intensive nursing care, that care is provided for an additional cost. Similarly, a resident requiring private living quarters or facilities with more amenities must pay a higher monthly fee.

We do not interpret the phrase "freely and voluntarily" to be synonymous with "free of cost." Reviewing the definition in the City of Pueblo's code, it bears a striking resemblance to a definition of "charitable" adopted by this court in *United Presbyterian Association*:

A charity, in the legal sense, may be more fully defined as a Gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or

---

7. *Maurer* addresses Colo. Const. art. X § 5. We have consistently interpreted Colo. Const. art. X § 5 as applying only to property taxes imposed by the state. *See Bd. of Assessment Appeals v. AM/FM Intern.*, 940 P.2d 338, 343 (Colo.1997); *United Presbyterian Ass'n*, 167 Colo. at 492, 448 P.2d at 971. The court of appeals recognized this, but nonetheless found the constitutional provision to be instructive by analogy. *Catholic Health Initiatives Colo. v. City of Pueblo*, 183 P.3d

612 (Colo.App.2007). While the court of appeals seemed to find guidance in this constitutional provision, the parties have not asserted it controls our analysis in this case. Thus, whether the language of the constitutional provision is sufficiently similar to the language of section 14-4-76, Pueblo, Colo., Mun.Code to warrant such a direct comparison is not an issue we need to address here.

otherwise lessening the burdens of government.

167 Colo. at 494–95, 448 P.2d at 971–72 (internal quotations omitted). Given the similarity in the two definitions, we believe the City of Pueblo's use of the phrase "freely and voluntarily" is meant to encapsulate general charitability.

Considering charitability in *United Presbyterian Association,* we stated:

> While charging fees would not necessarily remove plaintiff from the category of a charitable institution ..., the fact that it allocates living space from the standpoint of desirability of location and size on the basis of ... monthly charges paid by a resident seems to us lacking in the warmth and spontaneity indicative of charitable impulse. Rather, it seems more related to the bargaining of the market place.

*Id.* at 500, 448 P.2d at 974. The same reasoning applies here. Villa Pueblo's pricing and fee structure indicate the transactional, rather than charitable, nature of the services provided to residents.[8] *See id.* at 503, 448 P.2d at 976 ("[W]here material reciprocity between alleged recipients and their alleged donor exists—then charity does not."). Thus, Villa Pueblo does not exclusively offer its services in a free and voluntary manner.

Villa Pueblo does, however, maintain some residents who are unable to pay for the services they receive. Yet this does not change our analysis under this definition. Villa Pueblo does "freely and voluntarily"

minister to *some* residents. However, the City of Pueblo's definition requires an organization to "exclusively" provide services in a free and voluntary manner in order to qualify for the charitable organization sales and use tax exemption. As long as Villa Pueblo provides housing or nursing services to residents on a transactional or quid pro quo basis, despite its charity to some residents, it will fail to satisfy the City of Pueblo's definition. See Id. at 501, 448 P.2d at 975 ("The furnishing of homes to older adults is not in itself a charitable purpose."). Thus, while Catholic Health may operate Villa Pueblo in order to meet residents' physical, mental or spiritual needs, it does not exclusively do so "freely and voluntarily."

Villa Pueblo does not fall within the City of Pueblo's definition of "charitable organizations" entitled to a sales and use tax exemption because it does not exclusively provide its services in a free and voluntary manner. The City of Pueblo's tax exemption complies with the requirements of the Establishment Clause by serving a broad, secular purpose unrelated to the promotion of religion. Further, the imposition of sales and use taxes poses only an incidental burden on Catholic Health's religious practice and therefore does not violate the Free Exercise Clause.

It is clear, under our understanding of the code, that distinctions between organizations are immaterial—they must be treated the same, whether their motivations are secular or religious.[9] Given the misunderstandings

---

8. In fact, Villa Pueblo's fee structure was a major factor in the City of Pueblo's initial denial of a tax exemption. Responding to Catholic Health's initial request for a charitable organization sales and use tax exemption, the City of Pueblo stated:

> If Villa Pueblo provided residential care or nursing home care without any sort of charge or fee, or for a fee which is substantially less than the fee charged by for profit enterprises providing similar services, then Villa Pueblo would clearly be engaged in a "charitable function." However, Villa Pueblo charges substantial fees to its residents for its various services ... it appears that the fees charged by Villa Pueblo are comparable to the fees charged by for profit enterprises for similar services.

Letter from Lara Barett, Director of Finance, City of Pueblo, to Mark Kozik, Counsel to Catholic Health, Ernst & Young LLP (Aug. 13, 2001).

9. However, at oral argument, counsel for the City of Pueblo stated religious organizations may be subject to different treatment than charitable organizations under the code. While qualifying charitable organizations must provide their services "freely and voluntarily," he argued religious organizations engaged in the same activity may be required to offer their services for free. We do not know whether this statement, made in response to a question at oral argument by an attorney who was not involved in this case before appeal, implies that Pueblo subjected religious organizations to a different standard than other charitable organizations. The record is devoid of evidence relating to the issue of discriminatory application of the code, and Catholic Health has not alleged it was subject to discriminatory treatment. Thus, whether a discriminatory application of the code violated the Free Exercise Clause is not an issue before us at this time. Further, if the City of Pueblo gives partial exemptions to

that have permeated this case, the focus has been on whether Catholic Health is engaged in religious activity, rather than on the threshold question of whether Catholic Health is a "charitable organization" under the code's definition. We therefore reverse the holding of the court of appeals. In the interest of fairness, we also elect to remand the case, in order to provide the parties with an opportunity to raise issues and present additional evidence as may be appropriate given this new, clarified understanding of the definition.

## IV. Conclusion

Accordingly, we reverse the judgment of the court of appeals and remand the case to the court of appeals to return to the trial court with direction. Because our holding impacts the stipulations and waivers of the parties at the trial court level, the parties may raise issues and present additional evidence, and the court shall resolve the dispute in a manner consistent with this opinion.

Justice EID dissents, and Justice HOBBS and Justice RICE join in the dissent.

The City of Pueblo's tax code allows "religious or charitable" organizations to obtain an exemption from sales and use taxes. Pueblo Mun.Code § 14–4–21(5) (2008) (emphasis added). The majority's first mistake is to require religious organizations, such as Villa Pueblo, to meet the tax code's definition of "charitable organizations," thereby rendering the code's reference to "religious" organizations superfluous. But more importantly, the majority holds that Villa Pueblo was properly denied an exemption in this case because, even though it provides some residents with services free of charge, it provides others with services "on a transactional or quid pro quo basis." Maj. op. at 825. Yet by the City's own admission, it does not require *nonreligious* charitable organizations to offer their services entirely for free to obtain an exemption; instead, it grants such exemptions as long as the organization in question operates at a loss, which Villa Pueblo does. The City has thus applied its tax code in such a way that discriminates against religious organizations in violation of the Free Exercise Clause of the United States Constitution. U.S. Const. amend. 1.[1] By upholding the City's denial of an exemption in this case, the majority closes its eyes to this discriminatory treatment. I therefore respectfully dissent.

### I.

Section 14–4–76 of the Pueblo tax code exempts "charitable organizations" from sales and use taxes incurred "in the conduct of their regular religious or charitable functions and activities." Pueblo Mun.Code § 14–4–76 (2008). Section 14–4–21(5) defines "charitable organizations" as follows:

*Charitable organization* means any entity which:

 a. Has been certified as a not-for-profit organization under Section 501(c)(3) of the Internal Revenue Code; and

 b. Is a religious or charitable organization.

As used in this definition, a *charitable organization* is an organization which exclusively, and in a manner consistent with existing laws and for the benefit of an indefinite number of persons, freely and voluntarily ministers to the physical, mental or spiritual needs of persons, and which thereby lessens the burdens of government.

(emphasis in original). The interpretive question in this case is whether the definition of "charitable organization" appearing after subsection (b) (the "third paragraph") applies to the use of the term "charitable organization" in the first line of section 14–4–21(5), as the City argues, or whether it only applies to that term's use in subsection (b), as Catholic Health argues.

The majority adopts the City's interpretation, holding that the definition of "charita-

---

non-religious charitable organizations, it would not violate the Free Exercise Clause to give partial exemptions to Catholic Health.

**1.** The majority interprets only the federal First Amendment in its opinion. Maj. op. at 818.

ble organization" that appears in the third paragraph governs the first line of section 14–4–21(5). Maj. op. at 821. Thus, under the majority's interpretation, all organizations, either "charitable or religious" under subsection (b), must first satisfy the definition's requirements that they offer their services "exclusively, and in a manner consistent with existing laws and for the benefit of an indefinite number of persons, freely and voluntarily minister[ ] to the physical, mental or spiritual needs of persons, [and] ... thereby lessen[ ] the burdens of government." *Id.* The majority bases this interpretation on the fact that the term charitable organization is italicized in both the first line of section 14–4–21(5) and in the first line of the definition. *Id.* The majority also attaches significance to the use of the word "or" in subsection (b), and to the fact that section 14–4–76 exempts "charitable organizations" from sales and use tax, rather than "charitable or religious organizations." *Id.* at 821. Finally, the majority suggests that Catholic Health's interpretation "idly eliminate[s]" the third paragraph. *Id.* at 821.

I disagree with the majority's interpretation of the code's language, and would not read the third paragraph as defining the scope of a "religious organization" under the code. In my view, the more straightforward interpretation—and, indeed, the interpretation adopted by both courts below—confines application of the third paragraph to the term "charitable organization" within subsection (b).

In response to the majority's first ground, I note that italicization is a fairly slim reed on which to base an interpretation, especially since each of section 21's forty-five defined terms are italicized, yet only "charitable organization" is restricted by the third paragraph's "[a]s used in this definition" language. The majority's second ground is similarly unpersuasive. I agree with the majority that the use of the. term "or" indicates that there are two different types of organizations that can qualify as a "charitable organization" under section 14–4–76 of the code, maj. op. at 821, and that a "religious organization" is one of them. *Id.* But the majority's observations simply restate

the question in this case—namely, whether a religious organization must meet the requirements of the third paragraph to qualify as a "charitable organization"—without answering it.

But most importantly, it is the majority's interpretation, not Catholic Health's, that "idly eliminates" statutory language. Under Catholic Health's interpretation, the third paragraph is not eliminated; it simply applies only to the use of the term "charitable organization" in subsection (b). In contrast, by requiring religious organizations to satisfy the third paragraph, the majority renders superfluous the term "religious organization" as used in subsection (b). In other words, there would be no reason to refer to "religious *or* charitable organizations" in subsection (b) if all organizations had to meet the requirements of "charitable organization" set forth in the third paragraph. Subsection (b) would merely refer to "charitable organization" and omit any reference to "religious organization." Yet subsection (b)—by separating the terms "charitable" and "religious" organizations with the connector "or"—plainly contemplates that the term "religious organization" be given a meaning separate and apart from a charitable organization. While the term "religious organization" is undefined in the tax code, it must have a meaning that is independent of the term "charitable organization," or it is rendered superfluous.

In this case, the parties stipulated that Villa Pueblo is a "religious organization" as that term is used in the tax code. Thus, Villa Pueblo is a "charitable organization" under section 14–4–21(5) because it is both a "religious organization" under subsection (b) and has 501(c)(3) status under subsection (a). It is therefore exempt from sales and use taxes incurred "in the conduct of [its] regular religious ... functions and activities" under section 14–4–76.

## II.

But setting aside my differences with the majority over the language of the code, a more troubling aspect of the majority's opinion is the fact that it rejects Catholic Health's interpretation of that language on the ground that it raises constitutional prob-

lems. Maj. op. at 822. More specifically, the majority concludes that, if religious organizations are not subjected to the third paragraph, Pueblo's tax exemption scheme would violate the Establishment Clause. *Id.* at 822. In my view, the majority is avoiding a constitutional infirmity that does not exist. In addition, I believe the majority's interpretation creates a constitutional infirmity of its own—a violation of the Free Exercise Clause.

### A.

The majority concludes that Catholic Health's interpretation would run afoul of *Texas Monthly, Inc. v. Bullock,* 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989) (Brennan, J., plurality opinion), in which the Supreme Court struck down a sales tax exemption that applied only to religious periodicals. Maj. op. at 818, 822.[2] In that case, the statute in question gave an exemption to religious periodicals—and religious periodicals only. *Texas Monthly,* 489 U.S. at 5, 109 S.Ct. 890 (Brennan, J., plurality opinion). That there was no opportunity for nonreligious periodicals to obtain a similar exemption was fatal to the statute. *Id.* at 17, 109 S.Ct. 890 (statute flawed because it failed to offer "similar benefits for nonreligious publications or groups"); *see also id.* at 28, 109 S.Ct. 890 (finding that "by confining the tax exemption exclusively to the sale of religious publications, Texas engaged in preferential support for the communication of religious messages") (Blackmun, J., concurring in judgment). But here, the Pueblo code provisions (and Catholic Health's interpretation of them) do not suffer from this fatal flaw. On the contrary, under Catholic Health's interpretation, an organization is eligible for an exemption if it is a "charitable organization,"

defined as 501(c)(3) organizations that are either charitable *or* religious.

Further, the majority seems to believe that the third paragraph must be applied to religious organizations because the third paragraph (and only the third paragraph) defines the "broad, secular purpose" for the exemption. Maj. op. at 822. What the majority overlooks, however, is the fact that religious organizations or activities may be treated as a distinct category for exemption purposes as long as "similar" benefits are available to nonreligious organizations. *See Texas Monthly,* 489 U.S. at 17, 109 S.Ct. 890 (Brennan, J., plurality opinion) (noting statute's failure to offer "similar benefits for nonreligious publications or groups"); *see also Walz v. Tax Comm'n of City of N.Y.,* 397 U.S. 664, 666–67, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) (upholding provision against an Establishment Clause challenge that exempted "real or personal property used exclusively for religious, educational or charitable purposes as defined by law and owned by any corporation or association organized or conducted exclusively for one or more of such purposes and not operating for profit") (internal quotation marks and citation omitted).

At bottom, the majority believes that, by not subjecting religious organizations to the third paragraph, such organizations might receive preferential treatment. Maj. op. at 822. More specifically, the majority concludes that, under Catholic Health's interpretation, "secular organizations, engaged in exceedingly similar activities, [would be put] at a marked competitive disadvantage." *Id.* This is simply not the case. Under section 14–4–76, the exemption applies only to sales and use taxes incurred "in the conduct of [a charitable organization's] *regular religious or charitable functions and activities.*" (empha-

2. The majority relies on Justice Brennan's plurality opinion in *Texas Monthly, Inc. v. Bullock,* 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989). Maj. op. at 818, 819, 822, 823. Importantly, however, Justice Blackmun's concurrence provides the rationale for the Court in *Texas Monthly,* as it presents the narrowest grounds on which the decision is based. *See Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result

enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds ....") (internal quotation omitted). Accordingly, we must strive to construe "a tax-exemption statute [as being] consistent with both [Free Exercise and Establishment Clause] values." *Texas Monthly,* 489 U.S. at 27, 109 S.Ct. 890 (Blackmun, J., concurring). Catholic Health's interpretation of the tax code is consistent with both values; in my view, the majority's is not.

sis added). Thus, under Catholic Health's interpretation, activities that are not "religious" or "charitable" in nature fall outside the exemption. In other words, the majority's concern that a religious organization will be permitted to engage in "transactional" activities, maj. op. at 823, while nonreligious organizations will not be, is unfounded.

### B.

But what is most problematic about the majority's constitutional analysis is the fact that, in attempting to avoid an Establishment Clause problem, it creates a Free Exercise one. The City of Pueblo's interpretation of the exemption, endorsed by the majority, presents a classic whipsaw: it argues that all organizations, both charitable and religious, must be subjected to the same standards, including the third paragraph, but then interprets the third paragraph in such a way that a religious organization could rarely meet its demands. In this way, the majority permits the City to discriminate against religious organizations in violation of the Free Exercise Clause.

The third paragraph provides that "a *charitable organization* is an organization which exclusively, and in a manner consistent with existing laws and for the benefit of an indefinite number of persons, freely and voluntarily ministers to the physical, mental or spiritual needs of persons, and which thereby lessens the burdens of government." The City of Pueblo argues that Villa Pueblo cannot meet this definition because it does not offer its services for free. To quote the City's brief, "[t]he concept of charging admission to church or otherwise receive spiritual ministry would be odd to any attendee or recipient if not abhorrent to the religious organization. This is in part what makes such activity unique and appropriate for inclusion within the exemption." *Opening–Answer Brief of Respondent/Cross Petitioners City of Pueblo, Colo., et al.* at 42; *see also id.* at 44 (stating that Villa Pueblo was properly denied an exemption because it does not offer its services for "free").

Yet at oral argument, counsel for the City candidly admitted that nonreligious charitable organizations may charge for their services and still obtain an exemption. The majority acknowledges the City's concession, but discounts it because it was made under the pressure of oral argument by appellate, rather than trial, counsel. Maj. op. at 825 n. 9. In contrast, I would not dismiss the City's concession. In my view, the position that the City took at oral argument is entirely consistent with its briefing before this court. More importantly, the majority's entire decision denying an exemption to Villa Pueblo is based on a presumption that charitable and religious groups are being treated equally by the City—a presumption the City's own attorney admitted is wrong.

To put it somewhat differently, the majority's constitutional analysis begins and ends with the fact that the tax code is facially neutral. *See, e.g.,* maj. op. at 819 n. 6 ("The City of Pueblo's charitable sales and use tax exemption is neutral on its face."). But the majority's analysis simply ignores the fact that the ordinance has been applied in a *discriminatory manner*—as the City's own counsel conceded. As the United States Supreme Court has squarely held:

> Facial neutrality is not determinative. The Free Exercise Clause, like the Establishment Clause, extends beyond facial discrimination.... Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality. The Free Exercise Clause protects against government hostility which is masked, as well as overt.

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 534, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). Under Supreme Court precedent, facial neutrality does not shield a discriminatory application from challenge under the Free Exercise Clause. By not considering the City's discriminatory application of its tax code, the majority simply closes its eyes to the fact that the "neutral" interpretation it adopts is not in fact neutral.

The sole justification offered by the City for its discriminatory treatment of religious organizations simply demonstrates the impermissible nature of the discrimination in

this case. As noted above, the City argues that, under section 14–4–21(5)'s third paragraph, religious organizations cannot obtain an exemption unless they offer their services for free. This interpretation only applies to religious organizations, the City continues, because religious organizations, by definition, can never "lessen the burdens of government." According to the City, the only thing religious organizations can do is minister to the "spiritual needs of persons" under the third paragraph, and such ministering is not a burden of government that can be lessened. Nonreligious "charitable organizations," on the other hand, are permitted to charge fees for their activities because, as the City continues, their activities address the "physical and mental needs of persons," which can lessen the burden of government.

For example, counsel for the City stated at oral argument that:

> The definition of "free" in the context of religious activities—the city does not believe there is any reasonable basis to construe "free" other than that it is strictly construed; "free" means free. Now, in the context of charitable activities, the court has allowed [nonreligious charitable organizations to charge] fees for service *provided that what you take in is not more than what your costs are.* And the reason for this—and this is significant—is that these [charitable] activities lessen the burden of government.

(emphasis added). Under the City's own test, if Villa Pueblo were a nonreligious organization, it would be awarded an exemption because it operates at a loss. Maj. op. at

823. Only its religious nature keeps Villa Pueblo from obtaining an exemption.

In sum, the City argues that religious organizations—because of their religious focus—must meet the definition of charitable organizations (i.e., must offer their services for free), but charitable organizations—because of their nonreligious focus—do not (and may charge for their services). This is not a justification, it is simply a restatement of the discriminatory practice. The City's explanation for the discriminatory treatment is thus no justification at all, and falls far short of what the United States Constitution requires. *See, e.g., Lukumi,* 508 U.S. at 531–32, 113 S.Ct. 2217 (A law that is not neutral and of general applicability "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest.").[3]

The majority does not, in any way, expressly condemn the discriminatory position taken by the City. Instead, it simply states that religious and nonreligious organizations should be "treated the same," and remands the case "in order to provide the parties with an opportunity to raise issues and present additional evidence as may be appropriate given [the] new, clarified understanding" of the third paragraph it announces today. *Id.* at 825–39. In my view, this remand is a hollow one. The majority's opinion upholds the denial of the exemption to Villa Pueblo. More specifically, it finds that Villa Pueblo does not qualify as a "charitable organization" under the third paragraph because, while it provides some residents with services free of charge, it provides others with services "on a transactional or quid pro quo basis." *Id.* at 825.[4] Thus, even if Catholic

---

3. In addition, the City's justification is flatly inconsistent with the language of the third paragraph. As noted above, the third paragraph of section 14–4–21(5) provides that a "charitable organization" is an "organization which exclusively, and in a manner consistent with existing laws and for the benefit of an indefinite number of persons, freely and voluntarily ministers to the *physical, mental or spiritual needs of persons,* and which thereby lessens the burdens of government." (emphasis added). The third paragraph applies the requirement that services be "free[]" to all "minister[ing]"—whether to the "physical, mental or spiritual needs of persons." Certainly there is nothing in the language to suggest that "spiritual" needs must be freely ministered to, but "physical" or "mental" needs can be ministered to at a price.

4. The majority also notes that, to satisfy the dictates of the third paragraph, services do not have to be offered entirely for free, but rather be "general[ly] charitabl[e]." Maj. op. at 825. Yet the test that the majority does in fact apply amounts to an "entirely free" test. For example, the majority notes that, although "Villa Pueblo does 'freely and voluntarily' [i.e., entirely free] minister to *some* residents," it charges others. Maj. op. at 825. According to the majority, "[a]s long as Villa Pueblo provides housing or nursing services to residents on a transactional or quid pro quo basis, despite its charity to some residents, it will fail to satisfy" the third paragraph. *Id.*

Health were to present "additional evidence" or "raise issues" on remand that the City has engaged in discriminatory treatment, such evidence would have no effect on the majority's interpretation of the tax code or on its application of that interpretation to Villa Pueblo's request for an exemption. Under today's ruling, Villa Pueblo is not entitled to an exemption—discriminatory treatment notwithstanding.

The majority repeatedly asserts that the record in this case contains no evidence that the City applied its code in a discriminatory fashion, and states that Catholic Health has not alleged that it has been subjected to discriminatory treatment. Maj. op. at 819 n. 6, 825 n. 9. Yet, as noted above, the City's own counsel conceded such discriminatory treatment at oral argument. More importantly, Catholic Health has not alleged discriminatory treatment in this case because until the majority's opinion today it had no reason to. Indeed, the district court, the court of appeals, Catholic Health, and the City (until its petition for certiorari to this court) treated Villa Pueblo as a charitable organization entitled to an exemption from sales and use taxes incurred "in the conduct of their regular religious or charitable functions and activities" under section 14–4–76. It is the majority's opinion today—and only the majority's opinion—that permits the City to subject Villa Pueblo to an interpretation of the tax code that it has not applied to nonreligious charitable organizations.

Ultimately, this case does not involve a neutral and generally applicable law that incidentally burdens religion. *See, e.g., Employment Div., Dep't of Human Res. of Ore. v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *see also Jimmy Swaggart Ministries v. Bd. of Equalization of Cal.,* 493 U.S. 378, 398, 110 S.Ct. 688, 107 L.Ed.2d 796 (1990) (describing California's sales and use tax as "generally applicable" that "applies neutrally" to all retail sales of tangible personal property) (cited at maj. op. at 819). Instead, this case involves the application of a facially neutral law in a manner that discriminates against religion. *See, e.g., Lukumi,* 508 U.S. at 532–32, 113 S.Ct. 2217;

*see also Good News Club v. Milford Cent. Sch.,* 533 U.S. 98, 102, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001) (holding that public elementary school that operated a limited public forum for community groups to meet after school could not exclude religious group from meeting at school). The majority should not be permitted to sweep the Free Exercise problem presented by Pueblo's discriminatory application of its tax code under the rug of facial neutrality.

### III.

The majority upholds the City's denial of a tax exemption to Villa Pueblo on the ground that it does not offer its services for free. Yet the City does not require nonreligious charitable organizations to offer their services for free to obtain an exemption. Because the majority upholds the denial of Villa Pueblo's exemption despite the City's discriminatory treatment, I respectfully dissent from its opinion.

I am authorized to state that Justice HOBBS and Justice RICE join in this dissent.

